You all can hear me okay? Yes. All right. Oh, so it looks like we have both counsel in person. Okay. Got it. Thank you. Go ahead, Mr. Roberts. Thank you. Good morning, Your Honors. Max Roberts for Plaintiff Appellant Florentino Javier. I'd like to respectfully request three minutes of rebuttal time. Your Honors, this case concerns the interpretation of a statute which the California Supreme Court has repeatedly held must be construed broadly to protect consumer privacy. And for those reasons, the decisions of the California Supreme Court, the plain text of the statute, and the purpose behind the statute support reading CIPA, or the California Invasion of Privacy Act, Section 631 as requiring prior consent to any wiretapping. So first, the decisions of the California Supreme Court. In the Kearney case that Javier cites on reply, the California Supreme Court examined CIPA Section 632, another provision of the same statute. And like Section 631, that provision does not include the words prior or before or in advance. And yet, in enumerating the consent requirement of that statute, the California Supreme Court held that a third party may not eavesdrop on the confidential communications of others without first obtaining the consent of both parties to the communication. And that consent must be obtained at the outset of any communication. Now — Well, Your Honor, two things. First, even if it is dicta, the dicta of the State's highest court is clearly persuasive. And second, this Court in Magen v. Quicken Loans, and the site for that is 680 Federal Appendix 554, 9th Circuit, 2017, not only quoted that exact statement from Kearney, but applied it to yet another provision of CIPA, CIPA Section 632.7. And district courts, including the Raffin and Zaklit courts, which we cited on reply, have also applied Kearney's reading to 632.7. So dicta or not, it's been adopted by this Court and others. Now, the role of this Court is to predict how the California Supreme Court would rule on issues of statutory interpretation. I think both sides agree there was a presumption that if one statute is construed a certain way, then so must other sections of the statute be. And so it's likely the California Supreme Court would hold that Section 631 also requires prior consent. Second, the text. Consent, as it's commonly understood, is permission given in advance. And that makes good sense. If I go to a doctor's office and I'm talking about my medical data and my, you know, my history and my conditions with my doctor, and someone comes from behind a closed door and says, hey, I was listening outside and I was writing down and remembering everything that you said, do I have your consent to do this? Well, what I say doesn't matter, because if I say no, they already have my information. My privacy has been invaded. And if I say yes, it's not a real choice because I didn't get the option to say no. And that's exactly what we had here. We had Javier, who was applying his medical conditions, his age, his height, his gender, whether he was married, whether he smoked, whether he had certain conditions to assurance, and this third-party active prospect was secretly surveilling him. And assuming Javier had notice of the privacy policy, assuming the privacy policy disclosed active prospect's conduct, which, of course, Javier disputes, that privacy policy wasn't presented until after his information had already been collected. So what Javier said didn't really matter, because he said no, they already had his data, and therefore yes wasn't a real choice. And all of that goes to the third party. Roberts. But under California law, at least in contract world, there is a presumption that you could have retroactive consent. Why shouldn't we apply that here? Well, Your Honor, that's a different animating concern. So you first would have to have specific language in the terms of the contract that discuss retroactive consent. So, for instance, the lower court, it cites the Salgado and the Franco cases. But in both of those cases, either the contract was signed before the claim was brought and there was broad language saying that any and all disputes and one of those courts applied that to say it doesn't matter the timing of the dispute or subject to arbitration, or there was a specific wording of the contract that said pre-hire matters. But that's not the case here. All we have to do — And no language such as that. No language such as that, Your Honor. And that's how you distinguish those two cases. Yes, Your Honor. That they make clear in the language so that contractual law or common law law or implied consent doesn't apply. Yeah, that's correct, Your Honor. But in addition to that, there is this broad animating principle behind SIPA, which is that it's supposed to protect the right to privacy of Californians. And the California Supreme Court has consistently construed SIPA broadly because of that. And if there is any retroactive consent allowed, for the reasons I've just stated, then privacy will not be protected because Internet companies can collect your data before you have the opportunity to say yes or no. Imagine going to make a purchase, and on your shopping cart, before you say, make the purchase, they collect your credit card information. Imagine you're entering your Social Security somewhere, and before you say you agree, they collect it. But, counsel, if you consent, then what's the issue — what's the privacy issue? So take the doctor's example. You know, they tell you they recorded all information. You say, yes, you could record your information. Why should you have a cause of action after that? The issue, Your Honor, is that the consent is not meaningful because you're not given the choice to say no. If your data's already been — Why can't you say no and then sue the person? By saying yes, you're immunizing, essentially, the wiretapper. I would disagree respectfully, Your Honor, because I don't have the option to say yes. Because even if I say no, they're just going to say, okay, well, we have your data. So me saying yes — And then you sue them. That gives you a cause of action. But if you say yes, that implies that you're not going to sue them. But if I say yes, it also means that I haven't been given the option to say no. Because even if I say yes, they're not actually collecting what — they've already collected the things that I'm finding actionable. So the consent isn't actually meaningful. But even if Your Honor disagrees about after-the-fact consent, there's also the issue of whether Javier had notice of this privacy policy and whether the privacy policy disclosed the wiretapping. So at least as to the notice portion, you know, this is a hyperlink that is only distinguished by its color. It's buried in a giant paragraph that deals with telemarketing. It's not italicized like the hyperlinks in the Ticketmaster case that Judge Bumateu presided over. And it is further — it comes below the relevant buttons that a user must click on on a form that involves multiple entry fields and multiple standout features. So the lower court chided us for not taking a holistic approach. But Javier just articulated the factors that the court in Nguyen said that you must examine as to whether a privacy policy hyperlink is conspicuous, such as the design of the web page, any emphasizing features, et cetera. And looking at all those features, it's clear that the privacy policy hyperlink is not conspicuous. And further, assuming that after-the-fact consent is valid under the law and as contract and assuming that he had notice of a hyperlink, the privacy policy also did not disclose the wiretapping, or at least there's a question of fact as to whether or not it did. So, for instance, there's model language that actively— Before you get to that, can we do implied consent? So as I understand it, he clicks on the website, puts some information on, then has to click a button to add other additional information, and then finally gets to that consent button at the end. But when you put in information and you click a button and it stores it and gets you to the next page, you know that they're storing that information. It's unreasonable to think that you're not at least giving that information for Leah that they're going to store. How is there not an implied consent here, then? So, Your Honor, well, two things, Your Honor. First, I think there's a question of fact as to whether Assurance, who owns the website, is collecting that information as he's entering the web form. Again, I could type in my credit card information on a website to make a purchase, but I'm not expecting that to be collected until I click Make a Purchase. Well, I mean, but there's multiple screens here. So you put some information in and you have to go to the next screen. You know they're saving that information from the previous screen. So, Your Honor, then I would go to my second point, which is actually the third-party issue that Apelli's brought up on their answering brief. So there's a difference between Assurance, who is the website owner, and Active Prospect, which they admit is an independent third-party software reserve. And by they, I mean their CEO. We quote him in our pleadings. So Apelli, you know, Javier might have known that when he clicked Continue, Assurance was collecting his information. But there's nothing that says that Active Prospect was collecting his information. There's no privacy policy, you know, even buried on the bottom of the page. There's just no hyperlinks. Let me understand your argument. As I understand Section 631, there's no protection at all for Javier against Assurance collecting the information. The protection is against a third-party protecting the information. So when he's communicating with Assurance, he may well be impliedly consenting. It doesn't matter whether he consents or not, because 631 doesn't protect that one way or the other. The issue is whether or not he's consenting that the information be collected by a third-party he's never heard of. I would tweak that slightly, Your Honor, but that's generally correct. So the issue is, yes, whether this third-party is collecting his data, not Assurance. However, there is a provision of SIPA that prohibits enabling wiretapping, and Javier is also alleging claims against Assurance for that. But otherwise, Your Honor — I get that. But the communication with Assurance itself, by itself, is not protected. That's correct, Your Honor. If — so, you know, let me give an analogy. So Apelles analogized this case to Rogers v. Ulrich, which is a California Supreme Court case in which you had one party to a communication recording another with a tape recorder. No one else was present in that conversation. And the California Supreme Court there held there's no wiretapping because parties to the communication always know that they're being recorded by the other. Right? This case is like if the manufacturer of the tape recorder was standing outside of the door listening in on the conversation. It's also like the California Supreme Court's holding in the Ribas case where you had a lawyer who was listening in on a phone conversation between the lawyer's client and the client's husband. And the lawyer was not disclosed. And the California Supreme Court, even though that lawyer's not using the communications for herself, even though they're not, like, distributing it, that lawyer was a third-party wiretapper. And, in fact, the — Counsel, I just — it seems odd that — I mean, the tape recording example doesn't quite work here because, you know, this is a different era. We're more sophisticated technology now. This is — it's not like some — the president of Active Prospect is listening in as he's typing in. Right? It's just some sort of program that's embedded on the Assurance website, then, that saves it to Active Prospect's servers. And that's it. Right? There's no allegation that they've used that information any other way. I would disagree, Your Honor, respectfully, for at least two reasons. Okay. The first is that it is, in fact, Active Prospect who is collecting the data. The — you know, whether they are embedding the code in Assurance's website or not, they are getting access to the — But, I mean, companies use third parties all the time for certain parts of their, you know, their services. So that's like me using a ring phone. Right? Sorry, what's a ring phone? I'm sorry. A ring doorbell. Okay. If I buy a ring doorbell, I put it on my front door, ring is collecting all that information. And so if someone comes to the front door and I talk to them, it's being stored by ring. Under your theory, it seems like ring has criminal liability there. Well, Your Honor, it would also depend on whether it's, you know, electronic communication, so that might obviate ring on that regard. But — I assume it is. I think it — I'm pretty sure it is. I would say that unless there's consent, yes. And that's something that the solid court recognized. That's a central district opinion, which has said if a, you know, website owner could simply hire a third party to record somebody, that would completely undermine the provisions of this statute. You know, I don't think — I think there is a big difference between I just gave Assurance a software to do the recording, and I'm doing the recording myself. I am learning the contents of your communications. Everything that Javier said is now in the hands of this third party. And as the California Supreme Court said in Smith, he's lost — I mean, so with the Rogers case, the tape recorder case, if that tape recorder was online, you're saying that that case would be totally different? If there was a third party — so if I am recording you with my iPhone, and Apple is listening to that conversation and collecting my data, yes, that would be a different decision. That would be a criminal violation. Without consent. Without consent, yes, Your Honor. So I think that — But, I mean, it's your iPhone. But it's the third party who's collecting that information, right? You might know that — But for you, but, I mean, at least you would need some allegation that Apple is accessing that information and using it for their purposes. We would need an allegation that they're accessing that data, Your Honor, which Javier has alleged. We would not need an allegation that they use it, because SIPA establishes four different prongs of liability. And there's a separate prong for learning the contents of a communication and using the contents of a communication. There is an allegation that Active Prospect accessed Javier's information? Yes, Your Honor. In the complaint? Yes, Your Honor. We have a whole section about how Active Prospect — I think it's like the last section of the complaint before class action allegations is independently collecting this information, storing this information. Oh, yeah. Those are just generalized statements by the CEO, right? That's not specific to Javier. It's in the complaint, isn't it? It is in the complaint, Your Honor, and we allege that's exactly how Active Prospect happens here. We allege certain — I'm sorry. Did you allege that Active Prospect accessed Javier's information? Yes, Your Honor. You did? Okay. And we allege certain things related to their patent. And we allege that all of that is how Active Prospect was employed in this case. Okay. Your Honor, I see my time is running short, so I'm just going to briefly touch on the statute of limitations argument, if that's okay. So assuming that argument is properly before this Court because, you know, the local court — the district court said that Apelli's attempts to incorporate it were beyond the local rules, Javier's claim is timely under the delayed discovery rule, and on that regard, Franklin is instructive. That, like here, was originally a TCPA case. Franklin got calls between 2011 and 2015. He found out in discovery that he was recorded, and he commenced his lawsuit within a year of finding that out in 2018. The local court didn't — You didn't — as I read the complaint, you did address statute of limitations in some portion of it. So in a way, in the pleadings themselves, you raised the issue by attempting to overcome it. But your position is that we shouldn't deal with it on appeal? We shouldn't deal with it on appeal, Your Honor, because it wasn't raised by Apelli's in their most recent motion to dismiss, and in the motion to dismiss order by the lower court, the second one, it said that Apelli's attempts to incorporate their prior briefing were improper. Do you believe that with respect to the answer to your complaint, where you raised it, that they created an issue or there may be an issue of fact, or they didn't admit what you have alleged in your complaint, correct? I see my time is up. I might be able to answer your question. So usually a statute of limitations is a question of fact, and it's an affirmative defense we're not required to plead around. However, Javier did allege facts in the complaint saying, first, he first discovered this in 2020 of April, April 2020, and second, that he could not have discovered it earlier because there was no indication that he was wiretapped in the privacy policy, and that even assumes that he had noticed the privacy policy, which Javier also contests. And unless the Court has any further questions, I thank you for your time. Yeah. We'll give you some more time. Thank you. Good morning, Your Honor. May it please the Court. Kelly Klaus for the Apelli's. Your Honor, Judge White's judgment should be affirmed because Plaintiff expressly consented to Assurance's privacy policy. That policy told him and made clear that his information, including information about how he used the service and interacted with it, was collected. So that assumes that the statute does not require prior consent? Thank you, Judge Fletcher. So, yes. And I think let me go to the Kearney case, which was not cited at any time. And could you also address the Rebus case as well? Because the Rebus case was actually this section, Section 631. I will, absolutely, Your Honor. And the three points that I'd like to make with respect to Kearney are that it's a different statute, Section 632. A different section. A different section with, and this is the important point, different language and different public policy purposes than in Section 631. And it can't be automatically transferred over to Section 631, particularly in the Internet context, where not only is the statutory language different, but the purposes, as the courts have held, are quite different in terms of whether or not the communications are confidential. The critical portions of the Kearney decision, which I think start on about page 117 of 39 Cal 4th, focus on the fact that within Section 632, there are particular provisions that say, with respect to telephone calls, again, not the Internet, telephone calls, that protect the confidentiality of those calls. One is the definition of a person. One is the definition of a confidential communication. And the Court also says in footnote 10 of that opinion, to make clear that its telephone calls, that California consumers have an expectation that when they are called, they will be notified at the outset of the call whether it is being recorded. And the reason... That's generally, that is true. That is the wiretap statute. That's the criminal statute. And that's what you have here. But we're using Internet now, so people don't always get on the phone anymore and speak about what they intend to do and what they're contracting. I'm having a little trouble seeing the difference. The difference, Your Honor, is that in the Internet context, the presumption of whether or not a communication is confidential is reversed. And I would ask Your Honor to look at the Revitch opinion, which is Judge Chabria's section 632, that there is a presumption in the courts that Internet communications are not confidential. And the reason for that... Okay, that they're not confidential, even if you're communicating with somebody confidential information for the purpose of obtaining a contract of some sort. They didn't say, or maybe I need to repeat this, but are they saying that under all circumstances, Internet communications are not confidential? Not under all circumstances, Judge Silver. What Judge Chabria said there, what Judge Coe says, same thing, in the in-ray Google Gmail litigation case from 2013, is that under section 632, there is a presumption in the Internet context. It could be rebutted. The plaintiff didn't rebut it here. You're spending a lot of time on section 632. I wouldn't mind if we got to Rebus, which is 631. I'm happy to, Your Honor. And I'm just going to read to you from Justice Mosk's opinion in discussing 631, where he says, one commentator has noted that da-da-da-da-da, the privacy factor, and he's quoting the commentator, I'm on, the Privacy Act has been read to require the assent of all parties to communication before another may listen. Thus, the legislature could reasonably contemplate that section 631 would prohibit da-da-da. So this is now 631. It's not a holding. It's a statement. And we're supposed to predict what the California Supreme Court is going to do. I see nothing in either Kearney or in Rebus that suggests that after-the-fact consent works. Your Honor, with respect, on the Rebus case, two points. One is that although that is within the section, although that is within Section 631, that Justice Mosk was discussing that, that entire discussion was devoted to pushing back on a case called People v. Solis, which was cited about a page earlier, and where the court, where the court of appeal had relied on, had dismissed an argument on Section 632. And so the language that, that Justice Mosk was talking about related to, we think, Section 632. The other point I do want to make, and this goes to a question of whether the Section 631 is clear and whether the rule of lenity applies. So I did have a — This is a civil statute. I understand it's a criminal statute, but this is a civil enforcement coming under. So we're not talking criminal liability here. No, we're not, Your Honor. But as the U.S. Supreme Court has made clear for purposes of Federal law in the Leocal case, and as the, as the court of appeal said in the Warden v. Kahn case, which was construing Section 631 in a civil section, the rule of lenity applies where, as the court said in Warden v. Kahn, the statute is quite ambiguous. And with respect to the, the, the commentary that Justice Mosk cited, and as you pointed out, it is dicta because there was no question of consent. There was no consent at any time in the case. What he cited there was a California law review, 1182. And at page 1202, which is exactly the language that Justice Mosk was citing there, the commenter said that the, that the statute itself was not clear on its face. And it said, quote, Redrafting of this statute might be necessary to accomplish the intention of the legislature, and in any case would be desirable in the interest of simplification. And so I come back to my point that we, it, it is not clear that under Section 631 that, that what, when the consent must be provided.  Sotomayor, you know, let me talk. I understand the argument. I'm not yet convinced. But let me talk about the text of 631. The text of 16, of 631 says any person who willfully and without the consent attempts to read or learn the context while the same is in transit. That suggests while. It doesn't say anything about after the fact. While suggests beforehand, or that the consent must have been done before that happens. How can you get around the word while in that statute? Judge Fletcher, so as we pointed out in, in our brief, and I believe the citations are at page 23, don't have it memorized. But we cited numerous cases that said the while in transit has been held, the only cases we're aware of that it's been held to deal with the question of timing has to do with the question of it modifies the communication being in transit. Not the timing of, not the timing of consent. And the other thing that we've cited is the Gruber versus Yelp case, which says that the communication, now, Gruber versus Yelp is a section 632 case, but, because of phone call, but it's construing the word communication, which is what the plaintiff is charged here in terms of the communication being read on, that it's the entirety of the exchange. And so our argument there would be that there was one exchange, three minute, basically three or three and a half minutes that he was, that he was online. And our point is, even if, while in transit, modifies. You know, it occurs to me, although I don't think either parties asked for this, should we certify this? Certainly if you were going to rule against me, Your Honor, I would say certify. But, in all seriousness, Judge Fletcher, the question I believe is that we're not aware of a conflict in the cases. We're not aware of any conflict between any courts that have been. Well, that may be true, but it seems to me you're pushing against the dicta from the California Supreme Court. I fully acknowledge, Your Honor, that there is dicta from Section 632. And also, it's important. I would treat this as dicta in 631 as well on Rebus. And 631. And the other point, Judge Fletcher, is that with respect to 632.7, I want to make sure I don't forget to mention this. There was the comment my friend on the other side made that there's apparently a recent Ninth Circuit opinion, I don't know because it wasn't cited, that may say that the language from Kearney should be applied to 632.7. I just want to make clear, 632.7 is about cell phones. So, again, it's about phones. And as the Smith case makes clear, the California Supreme Court and California policy has taken a very particularized view that communications over the phone are presumed to be confidential. And, again, in the Internet context, there's not the same presumption. So you cited two Northern District cases for that proposition. Is there anything to suggest that California courts will adopt that change of presumption? I'm not aware of anything that suggests that the California courts might rule the other way on the question of Internet communications. And, again, it's telling here, Your Honor, the plaintiff did not bring a Section 632 claim. The plaintiff did not contend that the communications here were that there was a problem with confidential communications. The plaintiff did bring a California constitutional right of privacy claim in the district court, which the district court dismissed and which hasn't been appealed. So that's the issue for me. To me, SEPA is codifying the common law tort of evasion of privacy generally, correct? I think that is, at a general level of judgment, yes. Right. So to me, I was looking, what's the common law? Is there a common law defense to invasion of privacy that allows retroactive consent? And I couldn't find any. And there is, you know, there is retroactive consent in contract claims, which is what the district court relied on. But I don't know, there's a clear difference between common law evasion of privacy and common law contract claims. So why shouldn't we, since there is no case suggesting retroactive consent in the common law context of evasion of privacy, why shouldn't we follow that? Your Honor, I believe, I have two points. One is, I think that the consent that was provided here was provided during the entirety of the communication. Well, that's implied consent. Yeah. Which was within three and a half, which was, again, less than three and a half minutes. And there may be some other case where a plaintiff could make the showing that there was. Do you think that we should make the implied consent ruling, or should we kick that back to the district court? I think there, Your Honor, I think there is enough based on the facts here, which have been alleged three times, where he's had every opportunity to show what the facts will be. Help me understand the implied consent argument. I'm not yet convinced that there's implied consent. I understand there's implied consent, that assurance should have this. But how about the third party? I mean, they had no idea that they were communicating with a third party. Well, Your Honor, a couple of points on that. Well, first, if the implied consent is from the beginning, if we're talking about this in terms of from the very beginning. Let me make clear what I'm asking. Assume for the moment. I don't ask you to concede. Assume for the moment that prior consent is required. Yes. So he's now communicating this information, and the argument is he's impliedly giving prior consent that that information will go to the third party. How does that work? When he doesn't have any notion at all that the third party is listening in. Well, Your Honor, so first of all, I would say it definitely applies to assurance. I acknowledge it's a more difficult argument in the context of active prospect, although I do think active prospect here, and this goes to our point on the party and the points that, Judge Bumate, you were raising with my friend on the other side about what role exactly active prospect is playing here. And the question is, is active prospect like a third party? I should also note that the— Wait a minute. You're sliding away from my question. How is he impliedly consenting to active prospect listening in when he has no idea that active prospect is listening in? Because the implied consent argument there, Your Honor, would be that when somebody goes to a website, they know that it is not just abc.com that they are dealing with, that abc.com uses a number of infrastructure companies to operate their site. When you say that, you're asking us to make that finding as a matter of law? In other words, an undisputed fact that every person knows that? I'd say, Your Honor, I think the question is, in 2019, do people know that when they go to an internet site that they are dealing with more than simply the— Did you offer expert witnesses to testify? Are you saying this goes to the jury? This was on a motion to dismiss, Judge Silver. I'm not going to—I won't continue to fight on the implied consent point. There is a separate argument that I do have, which is—and I apologize. I'm over time. There is a separate argument that we have, which has to do with the party. And as the Rogers case points out, I think Reba's case as well, that somebody who is a party to the communication can't violate Section 631. And our point would be that for— I think those two are related, implied consent and the party. If active prospect is not a party and it's really only assurance on the other side, isn't the implied consent only then is assurance, you know, is storing, collecting my information, and, you know, you might impliedly consent that they have sub-agents that work for them on their website. So I think they're related, but— That's—yes, Your Honor. That's—and I wasn't sliding away too much from the implied consent point when I was raising that, but yes, that's— Did Judge White decide anything with respect to implied consent? Judge White decided express consent. That's what we have. And I will just say, with respect to the statute of limitations, we raised the argument in our motion to dismiss the original complaint. They amend it as a matter of right. We raised the statute of limitations argument in the motion to dismiss the first amended complaint. Judge White didn't address that. Judge White really did rest his decision solely on express consent. Was that part of your answer to the complaint? We didn't— As affirmative defense, did you raise implied consent despite the fact that this was a SEPA argument? Judge Silber, we—I'm sorry. Did you understand me? No, I— I'm just asking, did you raise this as part of your pleadings, meaning your answer, implied consent? So two—one is that we never got to the answer stage because we moved to dismiss. Okay. So then—so you never answered. Okay. Then so—but—and there was nothing in the complaint that even suggested implied consent, correct? Our argument, Judge Silber— There certainly was, as I found in the complaint, that there was—the plaintiffs tried to overcome in their language in the complaint that there was no statute of limitations issue. But they didn't, did they, as far as I could see, say that we're going to overcome this issue of implied consent. They relied almost exclusively on the SEPA argument, correct? I believe that's correct with—I believe that's correct with respect to implied consent, Judge Silber. Just to be clear, on the statute of limitations point, we are not contesting the fact that they included a paragraph that they say gets them over the one year statute of limitations. Well, they tried to. I know you're not admitting that. Yes. But they did say—they did raise it. The only thing at issue is, for us, is that an issue on appeal? Now, the other thing I'm asking, though, on this implied consent, and thank you for helping me understand it better, I think I understand the plaintiff's position is that implied consent doesn't apply at all when you're dealing with SEPA. You have to have prior consent, correct? Well, I think— It doesn't make any difference if you're dealing with assurance or you're dealing with a third party. You have to have prior consent. I think— That's her position. I do believe, Your Honor, that their position is that, just as a matter of law, that consent has to be obtained at the outset of whatever the communication is. And that implied consent doesn't apply when you're with this particular statute. It isn't even an issue. I think I may have heard, when my friend was arguing on the other side, a bit of a retreat from the argument there could be no implied consent as to assurance, because as to assurance, as he was moving through the web form, it's undoubtedly—just based on the facts that are alleged and what the nature of the web form is, and the fact that certain questions, like, for example, are you a smoker? And the next screen talks about you being eligible for a non-smoker discount. It makes it unreasonable for somebody to say they didn't think that that was being collected in real time as they moved through the web form. One final point, because Section 631 is a complicated statute, and I did think that I heard, in an exchange with you, Judge Silber, my friend on the other side say that there was an allegation under the use prong. Remember, there are four different prongs within Section 631A. Respectfully, I don't think that's correct. I don't think there is any allegation in the complaint about a misuse by active prospect or by assurance of the information that Javier provided, and I would simply direct the Court to the actual statements of the cause of action in the ER 95 to 96. And there is, in paragraph 75, there is a contention based on what's called the wiretapping portion of Section 631A, which we say is not applicable because that applies to telephone and telegraph lines. There's the allegation in paragraph 76 with respect to the eavesdropping, and paragraph 77 goes to the aiding and abetting, not to the use. I apologize for going over, and I appreciate the Court's time. That's kind of all right. Thank you. You asked a lot of questions, so that's fine. Thank you very much, Counsel. Mr. Roberts, we'll give you three minutes. Thank you, Your Honor. So, Your Honor, first I just want to clarify what my friend on the other side was saying about the use prong. Javier is alleging a use of his data by active prospect necessarily, but he doesn't need to. What we were trying to say was that there are separate prongs under SIPA. So if active prospect is learning the contents of his communications with insurance, which is what we maintain we do allege, that's sufficient for a violation. There doesn't have to be this separate use. That's something that the Graham v. Noom Court, that appellee site held, and Javier would maintain that's an error in the law because— What do you mean by learning, just collecting? Collecting and either attempting to know what was said or actually knowing what was said. Is that different than collecting? So, I mean, obviously they store it in their servers, but are you saying they access it in a different way than just storing it in their servers? Yes, Your Honor. We're saying that they actually know what Javier was saying to insurance without his consent expressed, implied, prior, whatever. My friend on the other side also brought up the Moosejaw case, which was actually one of ours. And, first, I know that Moosejaw sustained the SIPA Section 631 claim, which involved Internet communications. But, second, Moosejaw said there was no confidential communications because it was information about shopping for clothes on the Internet. This is about someone's medical information and whether they have certain diseases, whether they smoke, how tall they are, what age they are, more personal information that I think in any context should be accorded a right to privacy. And the California Supreme Court has consistently held that the statute as a whole, not just Section 632, but the statute as a whole, has to be interpreted broadly to protect consumer privacy. That also contrasts with my friend on the other side's statement about the rule of lenity, which the California Supreme Court in the Smith case recently refused to apply to Section 632.7 of SIPA. There, there was also some ambiguity in the statutory language. And the Smith court said that the rule only applies when you have the two interpretations of a statute stand in relative equipose. But that wasn't the case because the text and the legislative purpose behind SIPA, which is that broad protection for privacy, stood against the interpretation that the defendant in that case wanted. And that's the same thing here. We have the decisions of the California Supreme Court, dicta or otherwise. We have the text of the statute and how the wording is commonly understood. And we have the purpose behind SIPA all pointing one way, and appellees haven't offered anything meaningful to rebut those. And just as my last point, Judge Fletcher, you asked if we should certify the question to the California Supreme Court. I thought that might come up, and I had a better answer. But I think I'll just say what Mr. Klaus says, which is only if I'm going to lose. But honestly, you know, the role of this Court is to predict how the California Supreme Court would rule. But if you can just ask them, I mean, that's better than prediction. I know the Seventh Circuit recently did that in a question of their own statute. So if I'm going to lose, we wouldn't oppose it. But plaintiffs wouldn't oppose it regardless. The words of Justice Roberts. Not my relative. Never mind. They would sometimes rather be asked than told what they would rule. Well, thank you for your time, Your Honors. Thank you, Counsel. Thank you both for your excellent argument. This Court is in recess until tomorrow. All rise.
judges: FLETCHER, BUMATAY, Silver